**JONES–HAMILTON CO., a California Corporation, Plaintiff–Appellant,**

v.

**BEAZER MATERIALS & SERVICES, INC.; Kop–Coat, Inc., a Pennsylvania Corporation; Koppers Company, Inc., Defendants–Appellees.**

No. 91–15054.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 16, 1992.

Decided March 12, 1992.

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 24, 1992.

John L. Boos, Pettit & Martin, San Francisco, Cal., for plaintiff-appellant.

James L. Meeder, Beveridge & Diamond, San Francisco, Cal., for defendants-appellees.

Before GOODWIN, FLETCHER, and BRUNETTI, Circuit Judges.

## ORDER

The opinion filed on March 12, 1992, is amended as follows:

Slip opinion at 2528: In Part II.A., at the end of the first full paragraph, add the following footnote:

Beazer objects that *Abend* is at odds with prior decisions in this circuit regarding the appealability of summary judgment denials. We discern no intracircuit conflict.

In exercising jurisdiction over the partial denial of plaintiff's and defendants' summary judgment motions in *Abend*, we held that we may review a denial of summary judgment where it is accompanied by a final order disposing of all issues before the district court and where the record has been sufficiently developed to support meaningful review of the denied motion. *See Abend v. MCA, Inc.*, 863 F.2d 1465, 1468–72, 1482 n. 20 (9th Cir.1988).

This holding does not conflict with our prior statements of the general rule that, ordinarily, a denial of summary judgment is interlocutory and hence not appealable. *See, e.g., Datagate, Inc. v. Hewlett–Packard Co.*, 941 F.2d 864, 868 n. 1 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *White v. Pierce County*, 797 F.2d 812, 814 (9th Cir.1986). *Abend* merely applied a longstanding exception to the general rule, based on the familiar principle that interlocutory orders merge into final judgments. *See High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 n. 11 (9th Cir.1990) ("[B]ecause we have jurisdiction to decide [defendant's] appeal from the granting of plaintiffs' motion for summary judgment, we exercise our discretion to decide their claim of error in the denial of their summary judgment motion as well."); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 301 (9th Cir.1989) ("The denial of a summary judgment order is appealable after the entry of a final judg-

ment."); *see also Peyton v. Reynolds Assocs.*, 955 F.2d 247, 253 (4th Cir.1992); *American Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 (2d Cir. 1989); *Barhold v. Rodriguez*, 863 F.2d 233, 237 (2d Cir.1988); *Placid Oil Co. v. Ashland Oil, Inc.*, 792 F.2d 1127, 1133–34 (Temp.Emer.Ct.App.1986); *Morgan Guaranty Trust Co. v. Martin*, 466 F.2d 593, 599–600 & n. 9 (7th Cir.1972) (per curiam). *See generally* 15B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3914.28, at 213 (2d ed. 1991) ("The better cases recognize that on appeal from a final judgment an earlier denial of summary judgment can be reviewed if it becomes relevant upon disposition of other issues and if the record is sufficiently developed to support intelligent review.").

The court is, of course, under no obligation to exercise its discretion in every instance, and we have declined to review summary judgment denials where, for example, the final order in the case was a dismissal for lack of subject matter jurisdiction. *See Burke v. Ernest W. Hahn, Inc.*, 592 F.2d 542, 546 (9th Cir.1979); *Simons v. United States*, 497 F.2d 1046, 1048–50 (9th Cir.1974); *cf. Bealmer v. Texaco, Inc.*, 427 F.2d 885, 887 (9th Cir.) (per curiam) (refusing to exercise jurisdiction over plaintiff's appeal of summary judgment denial after holding that district court lacked jurisdiction to consider issues that led it to grant defendant's summary judgment motion), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970).

With the above amendment, the panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for en banc rehearing, and no judge of the court has requested a vote on the suggestion for rehearing en banc.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

FLETCHER, Circuit Judge:

Jones–Hamilton Co. ("J–H") appeals the district court's grant of summary judgment in favor of Beazer Materials & Services, Inc. ("Beazer") and denial of J–H's own motion for partial summary judgment. The district court found that J–H was obligated to indemnify Beazer for any liability Beazer incurred from environmental cleanup orders issued to J–H, and that this obligation barred J–H's action against Beazer for contribution under CERCLA.

We affirm in part and reverse in part.

## BACKGROUND

In 1970, J–H, a contract chemical formulator, entered into a formulation agreement (the "Agreement") with Wood Treating Chemicals Co. ("WTCC"). The Agreement was to continue in force until terminated by written notice; it was ultimately terminated in 1984. In 1971, WTCC was sold to Koppers Company; Beazer has assumed the duties and liabilities of Koppers under the Agreement and has been assigned all rights thereunder. Throughout this opinion, WTCC or its successors will be referred to as "Beazer." [1]

Under the Agreement, J–H would formulate raw materials provided by Beazer into wood preservation compounds. Beazer retained ownership of the materials it provided. The Agreement contained two clauses specifically relevant to this appeal. First, with regard to chemicals used in formulation, it provided: "A tolerance of up to two percent by volume shall be allowed for spillage or shrinkage in any calendar month...." With regard to indemnification, it provided: "J–H agrees to comply with all applicable Federal, State and Local laws, ordinances, codes, rules and regulations and to indemnify WTCC against all losses, damages and costs resulting from any failure of J–H or any of its employees, agents or contractors to do so."

J–H carried out formulation activities under the Agreement at its facility in Newark, California. Dr. Stutz, a consultant employed by Beazer, was on site at the facility and was present during the formulation process, although his role in the process is a matter of dispute.

Among the raw materials Beazer provided to J–H were pentachlorophenol and tetrachlorophenol, substances classified as "hazardous substances" under CERCLA. In 1970, J–H had received a waste discharge permit from the California Regional Water Quality Control Board ("RWQCB"); the permit prohibited J–H from discharging chemicals other than certain listed substances into its waste water containment ponds. However, prohibited substances, apparently including pentachlorophenol, were nonetheless discharged into the ponds.

In 1985, after contamination had been discovered at the Newark site, the RWQCB issued cleanup and abatement orders to J–H. J–H has spent over $2,000,000 to comply with the orders.

J–H filed suit against Beazer under CERCLA seeking contribution from Beazer for cleanup costs. See 42 U.S.C. § 9613(f). J–H also sought a declaratory judgment as to Beazer's potential liability under CERCLA. Beazer counterclaimed, seeking indemnity under the Agreement. Both parties filed motions for summary judgment. The district court granted summary judgment in favor of Beazer as to J–H's duty to indemnify Beazer, and held that the indemnification clause barred J–H's claim for contribution. It also denied J–H's motion for partial summary judgment on the issue of whether Beazer had "arranged for the disposal" of toxic substances. In addition, the district court awarded attorneys' fees to Beazer.

## JURISDICTION; STANDARD OF REVIEW

The district court had jurisdiction under 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331; this court has jurisdiction under 28 U.S.C. § 1291.

---

**1.** For further discussion of the parties to the district court case, see *Jones–Hamilton Co. v. Kop-Coat, Inc.,* 750 F.Supp. 1022, 1023 n. 1 (N.D.Cal.1990).

A grant of summary judgment is reviewed de novo. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir.1987). "A grant of summary judgment is reviewed de novo to determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

■ A federal court applies state law as it believes the highest court of the state would apply it. *Insurance Co. of N. Amer. v. Howard*, 679 F.2d 147, 149 (9th Cir.1982).

## DISCUSSION

I. Did the District Court Err in Granting Summary Judgment in Favor of Beazer?

A. Was the Indemnity Clause against Public Policy under CERCLA?

■ CERCLA's provision regarding indemnity clauses is truly murky:

No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1). As the district court noted in its opinion, courts around the country have reached different interpretations of this language. This court has held that enforcement of indemnification clauses does not frustrate public policy as expressed in CERCLA. *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir.1986). In *Mardan*, we reasoned that CERCLA policy would not be frustrated because all responsible parties would remain fully liable to the government, although they would be free to enter into

private contractual arrangements "essentially tangential to the enforcement of CERCLA's liability provisions." *Id.* Thus enforcement of the indemnification agreement would not violate public policy under CERCLA.

B. Scope of the Indemnity Clause

■ J–H argues that a question of fact remains as to whether it agreed to indemnify Beazer for environmental liability under the Agreement. It asserts that the district court erred in not considering the statements of J–H co-chairman James Black that J–H promised to comply only with "workman's compensation laws, overtime laws, labor laws, and industrial health and safety laws," and agreed to indemnify Beazer only for liability arising out of J–H's failure to comply with such laws.

■ Under California law, whether a contract is ambiguous is a question of law. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir.) (applying California law), *cert. denied*, 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). When interpreting a contract, even when the document is unambiguous on its face, a judge is required to give "at least a preliminary consideration [to] all credible evidence offered to prove the intention of the parties." *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 565, 442 P.2d 641, 645 (1968); *see also Brobeck, Phleger & Harrison*, 602 F.2d at 871 ("[T]he trial judge must receive relevant extrinsic evidence that can prove a meaning to which the language of the contract is 'reasonably susceptible.'"). However, after considering the evidence, the court may then exclude it if it "tend[s] to prove a meaning of which the language [of the contract] is not reasonably susceptible." *Thomas Drayage*, 69 Cal.Rptr. at 565 n. 7, 442 P.2d at 645 n. 7; *see also Brobeck, Phleger & Harrison*, 602 F.2d at 871. If the court finds that the language of the contract is not "reasonably susceptible" to the suggested interpretation, and excludes the evidence, "[t]he case may then be disposed of by summary judgment."

*Brobeck, Phleger & Harrison*, 602 F.2d at 871.

The question here, then, is whether an agreement under which J–H agrees to indemnify Beazer for liability arising from J–H's violation of "all applicable Federal, State and local laws, ordinances, codes, rules and regulations" is "reasonably susceptible" to the meaning that it in truth refers only to all "workman's compensation laws, overtime laws, labor laws, and industrial health and safety laws." J–H contends that, in this context, where J–H was to supply labor and facilities, and Beazer was to supply materials and expertise, this meaning is reasonable. We reject this argument: had the parties chosen to limit the scope of the indemnification clause in the manner J–H suggests, they would surely have made this clear in the Agreement. *Cf. Blumenfeld v. R.H. Macy & Co.*, 92 Cal.App.3d 38, 154 Cal.Rptr. 652, 656 (1979) (refusing to admit extrinsic evidence suggesting one particular cause of action was not assigned, where agreement explicitly assigned "all claims against third parties").

Thus, the district court did not err in refusing to consider the evidence J–H submitted. There was therefore no issue of fact as to the interpretation of the indemnity clause to preclude summary judgment. However, because issues of fact remained as to the scope of Beazer's involvement in the disposal of the toxic substances, we find the district court erred in granting summary judgment in favor of Beazer.

C. Beazer's Involvement in the Disposal of Hazardous Substances

J–H does not contest the district court's finding that it was obligated to indemnify Beazer for any liability Beazer incurred as a result of J–H's illegal acts. However, J–H claims that even if the indemnity provision can be read to apply to the violation of environmental laws, it requires that J–H indemnify Beazer only for damages Beazer incurs as a result of J–H's violation of laws, not Beazer's violation of laws. J–H therefore claims the district court erred in granting Beazer's motion for summary judgment because the court ignored this language in the agreement.

The language of the agreement and the evidence submitted by the parties suggest that the district court erred on this issue. The Agreement requires J–H to indemnify Beazer for liability Beazer incurs as a result of J–H's own actions. There remains an issue of fact as to the level of Beazer's participation in waste disposal, and thus as to its own liability.

At the outset, the agreement recognized the possibility of spillage of the materials Beazer provided and of which it retained ownership; such materials would apparently include the toxic chemicals at issue. J–H officers testified that J–H relied on Beazer for information and instructions on the handling of Beazer's chemicals. Additionally, evidence suggests that Beazer's consultant, Dr. Stutz, may have been actively involved in the production process at J–H. J–H submitted the deposition testimony of several of its employees, who described Stutz' participation in the production of Beazer's materials. In particular, these employees described Stutz' supervision and awareness of the procedures for rinsing the tote bins returned by customers—production which resulted in the introduction of hazardous chemicals into the evaporation pond from which contamination occurred.

On the basis of evidence before the district court when it ruled on the summary judgment motions, a jury could reasonably find Beazer itself was responsible, at least to some extent, for the contamination for which J–H became subject to CERCLA liability. Thus, because it ignored language in the agreement limiting J–H's duty to indemnify to Beazer's liability arising out of J–H's own illegal acts, and failed to consider evidence indicating the existence of issues of material fact, the district court erred in granting summary judgment in favor of Beazer.

II. Did the District Court Err in Denying J–H's Summary Judgment motion?

A. Appealability

Denial of a motion for summary judgment is generally not a final order, and

is therefore not appealable. *Abend v. MCA, Inc.*, 863 F.2d 1465, 1482 n. 20 (9th Cir.1988), *aff'd*, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). However, in this case, "the district court's grant of summary judgment was a final decision giving us jurisdiction to review its denial of plaintiff's motion for summary judgment." *Id.*[2]

**B. Was it error to deny the motion?**

■ J–H sought partial summary judgment on the issue of whether Beazer had "arranged for disposal" of toxic substances, and was thus itself liable under CERCLA.

> CERCLA imposes liability on
>
> any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances ...

42 U.S.C. § 9607(a)(3).

CERCLA does not define the term "arranged for." "Disposal" is defined as

> discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3); *see also* 42 U.S.C. § 9601(29) (adopting definition in 42 U.S.C. § 6903).

We have not yet addressed the issue of when liability for "arranging for disposal" will attach. Several courts of appeal and district courts around the country have, however, considered this question. *See, e.g., Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313 (11th Cir.

---

**2.** Beazer objects that *Abend* is at odds with prior decisions in this circuit regarding the appealability of summary judgment denials. We discern no intracircuit conflict.

In exercising jurisdiction over the partial denial of plaintiff's and defendants' summary judgment motions in *Abend*, we held that we may review a denial of summary judgment where it is accompanied by a final order disposing of all issues before the district court and where the record has been sufficiently developed to support meaningful review of the denied motion. *See Abend*, 863 F.2d at 1468–72, 1482 n. 20.

This holding does not conflict with our prior statements of the general rule that, ordinarily, a denial of summary judgment is interlocutory and hence not appealable. *See, e.g., Datagate, Inc. v. Hewlett–Packard Co.*, 941 F.2d 864, 868 n. 1 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *White v. Pierce County*, 797 F.2d 812, 814 (9th Cir.1986). *Abend* merely applied a longstanding exception to the general rule, based on the familiar principle that interlocutory orders merge into final judgments. *See High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 n. 11 (9th Cir.1990) ("[B]ecause we have jurisdiction to decide [defendant's] appeal from the granting of plaintiffs' motion for summary judgment, we exercise our discretion to decide their claim of error in the denial of their summary judgment motion as well."); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 301 (9th Cir.1989) ("The

denial of a summary judgment order is appealable after the entry of a final judgment."); *see also Peyton v. Reynolds Assocs.*, 955 F.2d 247, 253 (4th Cir.1992); *American Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 (2d Cir.1989); *Barhold v. Rodriguez*, 863 F.2d 233, 237 (2d Cir.1988); *Placid Oil Co. v. Ashland Oil, Inc.*, 792 F.2d 1127, 1133–34 (Temp. Emer.Ct.App.1986); *Morgan Guaranty Trust Co. v. Martin*, 466 F.2d 593, 599–600 & n. 9 (7th Cir.1972) (per curiam). *See generally* 15B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3914.28, at 213 (2d ed. 1991) ("The better cases recognize that on appeal from a final judgment an earlier denial of summary judgment can be reviewed if it becomes relevant upon disposition of other issues and if the record is sufficiently developed to support intelligent review.").

The court is, of course, under no obligation to exercise its discretion in every instance, and we have declined to review summary judgment denials where, for example, the final order in the case was a dismissal for lack of subject matter jurisdiction. *See Burke v. Ernest W. Hahn, Inc.*, 592 F.2d 542, 546 (9th Cir.1979); *Simons v. United States*, 497 F.2d 1046, 1048–50 (9th Cir. 1974); *cf. Bealmer v. Texaco, Inc.*, 427 F.2d 885, 887 (9th Cir.) (per curiam) (refusing to exercise jurisdiction over plaintiff's appeal of summary judgment denial after holding that district court lacked jurisdiction to consider issues that led it to grant defendant's summary judgment motion), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970).

1990) (discussed in footnote 2); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373 (8th Cir.1989) (discussed below); *CPC Int'l, Inc. v. Aerojet–Gen. Corp.,* 759 F.Supp. 1269 (W.D.Mich.1991); *B.F. Goodrich Co. v. Murtha,* 754 F.Supp. 960 (D.Conn.1991); *United States v. Shaner,* 1990 Westlaw 115085 (E.D.Pa.1990); *United States v. Velsicol Chem. Corp.,* 701 F.Supp. 140 (W.D.Tenn.1987).

An Eighth Circuit case on this issue presents facts very similar to those before us here. In *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373 (8th Cir.1989), that court refused to dismiss the United States' claim against pesticide companies which had hired a formulating company to perform certain processes on pesticides they supplied to the formulator. The pesticide companies retained ownership of the pesticides they supplied. According to the complaint, toxic waste was generated through spills and through the operations of the formulator. The court rejected the pesticide companies' argument that they could be liable only if they "intended" to dispose of waste, noting that such a narrow reading would frustrate CERCLA's goal of making companies that are responsible for the production of hazardous waste pay for cleanup. *Aceto,* 872 F.2d at 1380. The court also noted it would go beyond "defendants' characterizations to determine whether a transaction in fact involves an arrangement for the disposal of a hazardous substance." *Id.* at 1381. Finally, noting that the defendants before it owned the toxic substances at issue, it rejected the argument that they were not liable because they had no authority to control the formulator's operations. *Id.; see also United States v. Velsicol Chem. Corp.,* 701 F.Supp. 140 (W.D.Tenn.1987) (refusing to dismiss a case under this provision against companies which had done business with a

chemical blending company whose plant was a contaminated site).

Here, *Aceto* and, indeed, the language of the statute itself, suggest that the district court erred in denying partial summary judgment in favor of J–H. No issues of material fact remain. Under the agreement, Beazer retained ownership of all materials it supplied to J–H. Materials it supplied to J–H included pentachlorophenol and tetrachlorophenol, substances ultimately classified as hazardous by CERCLA. The agreement between Beazer and J–H contemplated 2% spillage of materials. Thus, it is clear that under the agreement Beazer "arranged for disposal" of toxic substances within the meaning of section 9607.[3]

Therefore, the district court erred in denying J–H's motion for partial summary judgment.

### III. Attorney's Fees

The district court awarded attorneys' fees to Beazer; Beazer also requests fees on appeal.

 The California Supreme Court has not yet determined whether an indemnitor can recover attorneys' fees for prosecuting its indemnity claim, and California Courts of Appeal are divided on this issue. *Compare Nicholson–Brown, Inc. v. City of San Jose,* 62 Cal.App.3d 526, 133 Cal. Rptr. 159 (1976) (awarding indemnitee attorneys' fees for successful suit against indemnitor); *Schackman v. Universal Pictures,* 255 Cal.App.2d 857, 63 Cal.Rptr. 607 (1967) (same) *with Hillman v. Burns,* 209 Cal.App.3d 860, 257 Cal.Rptr. 535 (1989) (indemnitee not entitled to attorneys' fees for action against indemnitor to establish right to indemnity); *County of San Joaquin v. Stockton Swim Club,* 42 Cal. App.3d 968, 117 Cal.Rptr. 300 (1974) (same); *Doyle v. Pacific Tel. and Tel.,* 202

---

**3.** The Eleventh Circuit case of *Florida Power & Light* is distinguishable from this case. In *Florida Power & Light,* the Eleventh Circuit refused to impose "arranging for disposal" liability on Allis Chalmers, where Allis Chalmers had sold Florida Power & Light transformers containing PCB's, and Florida Power & Light had used them for the approximately forty years of their

normal useful life before disposing of them. The Eleventh Circuit cited *Aceto* (and cases cited within it) with approval. However, refusing to establish a "per se" rule as to liability under this provision of CERCLA, it held that Allis Chalmers had not "arranged for disposal." *Florida Power & Light,* 893 F.2d at 1318.

Cal.App.2d 708, 21 Cal.Rptr. 326 (1962) (same). In *DeWitt v. Western Pac. R.R. Co.*, 719 F.2d 1448 (9th Cir.1983), we noted this split in authority, but chose to follow the *Schackman* line of cases and held that under California law, the indemnitee can recover attorneys' fees for an action against the indemnitor.[4] However, because the district court must determine on remand the outcome of the case, we vacate the district court's award of attorneys' fees and decline to award fees on appeal at this time. While the district court correctly found that Beazer was entitled to indemnity for any liability it incurred as a result of J–H's unlawful acts, it erred in holding that Beazer itself had incurred no liability as a result of its own actions. When it has determined to what extent each party is responsible for cleanup costs, the district court should reconsider the issue of attorneys' fees both for services before the district court and for this appeal.

## IV. Conclusion

We affirm the district court's holding that J–H is obligated to indemnify Beazer for any liability Beazer has incurred as a result of J–H's illegal acts and that to that extent J–H cannot seek contribution. However, we vacate the district court's award of attorneys' fees, without prejudice to Beazer to move at an appropriate time for fees for its services both before the district court and for this appeal. The district court should grant summary judgment in favor of J–H, holding that Beazer "arranged for disposal" of hazardous materials. The issue to be resolved at trial, therefore, is the extent to which Beazer is responsible for contribution to cleanup costs, as a result of its "arranger" liability and its own participation, if any, in waste disposal at J–H's facility.

4. J–H suggests that we "reevaluate" our holding in *DeWitt*, in light of *Hillman*, which was decided after *DeWitt*. *DeWitt's* interpretation of California law is "binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir.1983). In this instance, J–H can only point to an additional intermediate appellate court decision on one side of a clear split. This does not provide the kind of indication that our past interpretation of California law was incorrect that would cause us to revisit our holding in *DeWitt*.

AFFIRMED IN PART AND REVERSED IN PART.