86 F.3d 1162
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James GEIBEL, Plaintiff-Appellant,
v.
SEARS, ROEBUCK AND CO., Defendant-Appellee.
 No. 94-56617.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1996.
Decided May 24, 1996.
 
 Before: GIBSON,* NOONAN, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 James Geibel appeals the district court's grant of summary judgment dismissing his claim. We affirm.
 
 I. BACKGROUND
 
 3
 In January, 1988, James Geibel was riding his bicycle when it collapsed beneath him and threw him to the street, breaking his neck. Geibel filed suit against the City of Torrance, certain named contractors, and Sears Roebuck and Co., Inc. (Sears). Geibel's cause of action against the city and the contractors alleged negligence, willful failure to warn, and dangerous condition of property. Geibel's cause of action against Sears alleged strict liability, negligence, and breach of express and implied warranties.
 
 
 4
 After three years of discovery, Sears moved for summary judgment on the basis that Sears had not sold the allegedly defective bicycle. While the motion was pending, Geibel agreed to dismiss his claim against Sears without prejudice and proceed against the remaining defendants. In exchange, Sears agreed to toll the statute of limitations and allow Geibel to refile his claim against it later, provided Geibel introduced new evidence establishing that Sears had in fact sold the bicycle in question. The agreement was reduced to writing, the relevant section reads as follows:
 
 
 5
 2. Plaintiff shall have the option to refile his complaint against Sears within one year after judgment, settlement or final resolution of his other claims against the remaining defendants. Plaintiff shall not, however, refile his claims against Sears unless Plaintiff establishes that Sears actually sold the allegedly defective bicycle by evidence other than that which Plaintiff already has produced to Sears in discovery.
 
 
 6
 After fully pursuing his cause of action against the other defendants, Geibel refiled his claim against Sears in state court on March 25, 1994. Sears removed the case to federal district court and moved for summary judgment based on California's applicable one-year statute of limitations.[1] The district court granted the motion, concluding that the statute of limitations was not tolled under the settlement agreement because Geibel had offered no new evidence that was not already produced in discovery in the prior action. Geibel appeals.
 
 II. DISCUSSION
 
 7
 Geibel argues that the statute of limitations should have been tolled pursuant to the terms of the settlement agreement because he came forward with new evidence establishing that Sears sold the allegedly defective bicycle. Alternatively, Geibel asserts that the district court erred in declining to consider parol evidence regarding the meaning of the settlement agreement. We review the district court's grant of summary judgment de novo, in order to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law. Jones-Hamilton Co. v. Beazer Materials & Services, Inc., 973 F.2d 688, 692 (9th Cir.1992). The interpretation of a contract such as a settlement agreement is a mixed question of law and fact. "When the district court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law and reviewable de novo." Miller v. Safeco Title Ins. Co., 758 F.2d 364, 367 (9th Cir.1985). "When the inquiry focuses on extrinsic evidence of related facts, however, the trial court's conclusions will not be reversed unless they are clearly erroneous." Id. As a federal court sitting in diversity, we will apply state law as we believe the highest court of the forum state would. Jones-Hamilton, 973 F.2d at 692.
 
 
 8
 Geibel argues that he has satisfied the settlement's tolling preconditions by establishing through two pieces of evidence not previously disclosed in discovery that Sears sold the bicycle in issue. The first is a 1974 Consumer Reports article detailing Sears' practice of substituting different models of bicycles for those shown in its catalogs. The second is a Sears employee discount card issued to Geibel in 1984 that entitled him to buy Sears merchandise at a discount.
 
 
 9
 We entertain serious doubts as to whether this evidence was not produced in the prior's action's discovery. It is undisputed that Geibel's counsel mailed a copy of the Consumer Reports article to Sears' counsel as an enclosure to a letter dated July 13, 1991. Geibel asserts nonetheless that this constitutes new evidence within the meaning of the settlement agreement because the disclosure was made through informal as opposed to formal discovery procedures. But the settlement agreement makes no such distinction. As the Fifth Circuit has observed, informal discovery is often the most effective component of the overall discovery process:
 
 
 10
 Discovery in its most efficient utilization should be totally extra-judicial. The Court should rarely be required to intervene. Being an extra judicial process, informality in the discovery of information is desired. It is too often forgotten that a conference with or telephone call to opposing counsel may often achieve the results sought by formal discovery.
 
 
 11
 Cotton v. Hinton, 559 F.2d 1326, 1332 (5th Cir.1977). We believe the broad term "discovery" necessarily encompasses both formal and informal discovery means. Indeed, our own Federal Rules of Civil Procedure now provide for both formal and informal discovery procedures. Fed.R.Civ.P. 26(a) & (b).
 
 
 12
 The discount card potentially presents a thornier question. The district court concluded that it was not new evidence, but more of the same evidence of the Geibel family's purchasing habits offered in Geibel's father's deposition. Whether this is correct or not, neither piece of "new" evidence satisfies the second requirement of the agreement by establishing that Sears sold the bicycle in question. At best, the Consumer Reports article is some evidence of Sears' contemporaneous selling habits, and the discount card is some evidence of the Geibel family's purchasing habits (albeit very little evidence, considering that the bicycle was alleged to have been purchased in 1973, ten years before the discount card was issued). This circumstantial evidence comes nowhere near establishing the controverted fact as to whether Sears actually sold the bicycle. Geibel argues that evidence "tending to establish" that Sears sold the bicycle is enough to satisfy the settlement agreement. But that is not what the agreement calls for. We conclude that Geibel has failed to meet the prerequisites to the tolling provision under the plain language of the settlement agreement.
 
 
 13
 Geibel argues that the district court erred in refusing to consider extrinsic evidence supporting his liberal interpretation of the terms "evidence," "discovery," and "establish." Specifically, Geibel relies on a conversation that allegedly took place during the negotiation of the settlement agreement in which Sears' counsel assured his counsel that "anything at all" would satisfy the tolling provision, and that it would not be strictly enforced. California's approach to the parol evidence rule involves two initial inquiries: "1) was the writing intended to be an integration, i.e. a complete and final expression of the parties' agreement, precluding any evidence of collateral agreements; and 2) is the agreement susceptible of the meaning contended for by the party offering the evidence?" Gerdlund v. Electronic Dispensers, Int'l, 235 Cal.Rptr. 279, 282 (Cal.Ct.App.1987) (citations omitted).
 
 
 14
 It is apparent from its integration clause that the settlement agreement is a fully-integrated document.[2] As a result, California's parol evidence rule bars any evidence of additional terms as well as evidence of prior agreements or contemporaneous oral agreements contradicting the written terms of the agreement. Cal.Civ.Proc.Code § 1856(a) & (b) (West 1996). Even if a contract is fully integrated, extrinsic evidence may still be admissible to prove an interpretation to which the language of the contract is reasonably susceptible under the second prong of this dual inquiry. Banco Do Brasil, S.A. v. Latian, Inc., 285 Cal.Rptr. 870, 886 (Cal.Ct.App.1991), cert. denied, 504 U.S. 986 (1992). As a result, we must preliminarily consider the offered extrinsic evidence in order to determine whether it resolves a potential ambiguity or results in an absurdity. Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 442 P.2d 641, 644-46 (Cal.1968).[3]
 
 
 15
 We do not find the language of the agreement to be reasonably susceptible to this interpretation for several reasons. First, such an interpretation would violate one of the cardinal rules of contractual interpretation by rendering the prerequisites to the tolling provision an effective nullity. Brinderson-Newberg Joint Venture v. Pacific Erectors, 971 F.2d 272, 278-79 (9th Cir.1992) ("It is well settled that a contract should be interpreted so as to give meaning to each of its provisions....") (citing Restatement (Second) of Contracts § 203(a) cmt. b (1979); Cal.Civ.Code § 1641 (West 1995)), cert. denied, 507 U.S. 914 (1993). Second, this reading directly contradicts Clause E(2) of the agreement, which provides: "No party ... or attorney of or for any party, has made any statement or representation regarding any fact relied upon in entering into this Agreement, and no party relies upon any statement, representation or promise of any other party ... or attorney...."
 
 
 16
 More important is the inescapable conclusion that, even with the benefit of all reasonable inferences, Geibel has shown nothing more than a contemporaneous oral agreement that the settlement agreement shall not mean what it expressly purports to mean. If this is actually the case, Geibel cannot reasonably expect the courts to disregard the written contract. Brinderson-Newberg, 971 F.2d at 278 (terms of written agreement not reasonably susceptible to contemporaneous oral agreement that written agreement would not mean what it purported to mean); Jones-Hamilton, 973 F.2d at 693 ("[H]ad the parties chosen to limit [the agreement] in the manner [appellant] suggests, they would surely have made this clear in the Agreement."). "The law recognizes the written integrated contract as the final word on the actual agreement of the parties and requires that the contract itself be reasonably susceptible [to the proponent's] proffered meaning." Brinderson-Newberg, 971 F.2d at 278. As a result, we conclude that the district court properly declined to consider this extrinsic evidence.
 
 III. CONCLUSION
 
 17
 For the aforementioned reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Cal.Civ.Proc.Code § 340(3) (West 1996)
 
 
 [2]
 Clause F(3) of the settlement agreement provides: "This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersede [sic] all prior and contemporaneous oral and written agreements, representations, negotiations and discussions."
 
 
 [3]
 We are mindful that this evidence treads the fine line between extrinsic evidence offered to contradict the express written terms of an agreement and extrinsic evidence offered to explain those terms. For the sake of argument, we will characterize this evidence as interpretive rather than contradictory