**Yvonne MORAN, Plaintiff–Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant–Appellee.**

**No. 87–6733.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1988.

Decided April 4, 1989.

Richard S. MacNaughton, Beverly Hills, Cal., for plaintiff-appellant.

Michael P. McNamara, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant-appellee.

Before FLETCHER, ALARCON and KOZINSKI, Circuit Judges.

ALARCON, Circuit Judge:

The Plaintiff/Appellant Yvonne Moran, (Moran) appeals from the district court's grant of summary judgment in favor of Defendant/Appellee Aetna Life Insurance Company (Aetna) and the denial of Moran's motion for summary judgment. Moran sued Aetna as a "Plan Administrator" under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.

§ 1001 *et seq.* (1982 & Supp. IV 1986) for failure to provide Plan Documents at Moran's request. The district court concluded that since Aetna was not the plan administrator as defined by 29 U.S.C. § 1002(16)(A) (1982), it is not liable for damages under 29 U.S.C. § 1132(c) (Supp. IV 1986).

Moran contends that Aetna is liable under section 1132(c) because its claims supervisor advised her attorney that Aetna was the plan administrator. Because Aetna was not the plan administrator under the applicable statutory language, we disagree and affirm.

I

Moran was an employee of the law firm of Meserve, Mumper & Hughes (employer) and was insured under an Aetna policy. Aetna provided the employer with a booklet describing the plan for distribution to the employees. The booklet does not identify a plan administrator. Aetna also provided Moran with a health insurance identification card which states that "[t]his group Health Benefits Program is administered by Aetna Life Insurance Company."

Moran received chiropractic treatments from Dr. Jim Takeda in July 1986. Dr. Takeda submitted a claim for his services to Aetna in the amount of $364.00. On September 16, 1986, Aetna sent a check for $104.00 in payment of the claim. Aetna also informed Dr. Takeda and Moran of the benefits provided under the plan and denied a portion of the claim.

Moran's attorney, Richard MacNaughton, wrote to Aetna on September 29, 1987, requesting a copy of the Plan Documents and the insurance policy. Mr. MacNaughton also inquired whether Aetna was the "Plan Administrator" of the plan.

Ruthie McNatt, Aetna's claims supervisor, replied to MacNaughton's letter on November 10, 1986. She explained why Aetna denied a portion of the claim. McNatt also stated that "[y]our [plaintiff's counsel's] assumption that Aetna is the plan administrator is correct."

MacNaughton claims to have sent letters to Aetna on December 5, 1986, January 10,

1987, February 12, 1987, and March 6, 1987, reiterating the request for Plan Documents and stating that he relied on McNatt's statement in the November 10, 1986, letter that Aetna was the plan administrator. MacNaughton obtained proof of service by mail for the March 6, 1987 letter. Aetna denies receiving these letters. Aetna's employees allege that they never read any of these letters, and that they are not in the relevant files.

On April 3, 1987, Moran filed this action in the district court against Aetna under 29 U.S.C. § 1132(c) to obtain copies of ERISA Plan Documents. On April 29, 1987, subsequent to the filing of this lawsuit, a senior attorney with Aetna, Linda Newton, wrote MacNaughton to deny that Aetna was the "Plan Administrator" under ERISA. Newton also provided MacNaughton with a copy of the group policy and the certificate/booklet prepared for Meserve, Mumper & Hughes to distribute to its employees participating in the plan.

The district court entered summary judgment in Aetna's favor on November 30, 1987. Moran has filed a timely appeal from that order. She also seeks review of the September 14, 1987 order denying her motion for summary judgment.

## II

The district court had jurisdiction over this matter pursuant to ERISA, Section 502(e)(1), 29 U.S.C. § 1132(e)(1) (1982). The district court's order of November 30, 1987, granting summary judgment in favor of Aetna constitutes a final order, reviewable by this court under 28 U.S.C. § 1291 (1982).

We review a grant of summary judgment independently and without deference to the district court's conclusion "and will affirm if the pleadings and supporting materials show the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Medallion Television Enterprises, Inc. v. SelecTV of Calif., Inc.*, 833 F.2d 1360, 1362 (9th Cir.1987) (Citation omitted).

■ Aetna argued in support of its motion for summary judgment that it cannot be sued under section 1132(c) because it is not the plan administrator under section 1002(16)(A). Moran responded that Aetna should be estopped from denying that it is the plan administrator because of the representation of its claims supervisor.

Section 1132(c) provides:

Any administrator ... (2) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

"In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g) (1982).

An administrator has a duty of disclosure and reporting:

The administrator of each employee benefit plan shall cause to be furnished in accordance with Section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan—

(1) a summary plan description described in Section 1022(a)(1) of this title: and

(2) the information described in Section 1024(b)(3) and 1025(a) and (c) of this title.

29 U.S.C. § 1021(a) (1982).

ERISA further requires that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of ... instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4) (1982).

An administrator of an ERISA plan has a duty to provide a plan summary and other documents to each participant upon request under sections 1021(a) and 1024(b)(4). Failure or refusal to provide such documents

may result in fines of up to $100 a day, costs and attorney's fees under sections 1132(c) and (g).

Section 1002(16)(A) defines a plan "administrator" as follows:

The term "administrator" means—

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

The group policy in the instant matter does not designate an administrator under section 1002(16)(A)(i). Therefore, the "plan sponsor" is the administrator under section 1002(16)(A)(ii). The term "plan sponsor" refers to "the employer in the case of an employee benefit plan established or maintained by a single employer." 29 U.S.C. § 1002(16)(B)(i) (1982). Under these facts, Moran's employer, Meserve, Mumper & Hughes, is the plan administrator under section 1132(c).

### III

The United States Supreme Court has stated: "We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." *Mass. Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). The Supreme Court further stated that when "a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Id.* (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979)).[1] The precise question presented in *Russell* concerned the *types* of remedies available under ERISA. The Supreme Court held that ERISA does not provide a cause of action for extracontractual damages to a beneficiary caused by improper processing of benefit claims. *Id.* Section 409(a) could not extend relief because other sections of ERISA benefit individuals. *Id.* at 142–43, 105 S.Ct. at 3090–91.[2]

We believe that the rationale and policies articulated by the court in *Russell* require us to limit liability under 1132(c) to the targets expressly identified by Congress in section 1002(16). Congress has provided for three classes of persons who may be sued as the plan administrator under section 1132(c). Because Aetna was not designated as plan administrator in the policy and is not the plan sponsor, it is not liable

---

**1.** The dissent is correct that Congress has empowered federal courts to develop federal common law with respect to ERISA. However, Congress surely did not intend that courts would develop a federal common law which abrogates the explicit provisions of ERISA. "It is clear, then, that ERISA represents a congressional (footnote continued) mandate for the creation and enforcement of a comprehensive and nationally *uniform* regulatory scheme." *Menhorn v. Firestone Tire and Rubber Co.,* 738 F.2d 1496, 1500 (9th Cir.1984) (emphasis added). To allow a fiduciary to be sued as a plan administrator under ERISA based on an estoppel theory would nullify the express provisions of ERISA contravening Congress' intent to create a uniform regulatory scheme.

The dissent asserts that invocation of estoppel in this case does no violence to the language of the statute, but merely precludes Aetna from denying that it is the plan administrator. Dissent at 3400–01 n. 2. On the contrary, invocation of estoppel in this case would do violence to the statute by subjecting a fiduciary to sanc-

tions applicable to a plan administrator for not performing certain functions, i.e. failure to provide plan documents upon request. "Procedural requirements established by Congress for gaining access to federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.... [S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of even handed administration of the law." *Baldwin Co. Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (per curiam) (Federal Rules language not subject to equitable tolling).

**2.** Contrary to the view in the dissent, we believe that *Russell* is dispositive of the issue presented here. Moran seeks to obtain relief from Aetna, a *fiduciary,* based on an ERISA statute which provides Moran remedies against a *plan administrator.* Since ERISA provides Moran with proper remedies against Aetna, under sections 1132(a)(2) and 1109(a), we decline to extend application of section 1132(c) to recover excessive relief against a fiduciary.

under the statute.[3]

Both parties agree that Aetna is not the plan administrator as defined by section 1002(16). Moran states in Plaintiff's Reply Memorandum in Support of her Motion for Partial Summary Judgment that "[d]efendant contends that it is not the Plan Administrator. Plaintiff obviously agrees. That is the very reason that plaintiff has brought this motion on the Estoppel Theory." We have recently refused to apply estoppel to a claim governed by ERISA. In *Davidian v. S. Cal. Meat Cutters Union*, 859 F.2d 134, 136–37 (9th Cir.1988), we held that ERISA forbids recovery against a benefit fund based upon estoppel. Davidian sought recovery of benefits from a benefit fund based on estoppel, claiming a fund employee misled him as to the limitations of a health insurance plan. We rejected Davidian's estoppel theory based in part on our earlier decision in *Thurber v. W. Conf. of Teamsters Pension Plan*, 542 F.2d 1106 (9th Cir.1976) (per curiam) that "a benefit plan could not be equitably estopped from denying benefits if payment would be inconsistent with the written plan." *Davidian*, at 135.[4]

Similarly, we cannot equitably estop Aetna from denying it is the plan administrator if permitting recovery in this action would be inconsistent with the express language of section 1002(16)(A). It should be noted that Moran has not sought to recover against Aetna for breach of fiduciary duty under sections 1132(a)(2) and 1109(a). Instead, Moran has elected to bring an action against Aetna solely under section 1132(c), which provides a remedy against persons designated by Congress as plan administrators.[5]

We believe that the Supreme Court's refusal to expand the remedies available under ERISA in *Russell* precludes us from extending liability under section 1132(c) to other persons not named by Congress. The statute expressly identifies in section 1002(16) the persons or entities that may be sued under section 1132(c). We do not have the power to rewrite the statute to extend liability to a business entity that has mistakenly identified itself as the plan administrator by its agent. The district court did not err in granting Aetna's motion for a summary judgment.

## IV

█ Moran did not allege a separate cause of action for breach of a fiduciary duty. Moran now asserts for the first time on appeal that Aetna breached a fiduciary duty owed to Moran by not providing accurate information concerning the plan administrator. Because Moran did not present this theory of recovery to the district court, we decline to address it in this appeal. *See United States v. Immordino*, 534 F.2d 1378, 1381 (10th Cir.1976) (contention not presented to trial court for consideration will not be considered by court on appeal).

## V

█ In Moran's notice of appeal Moran also seeks review of the denial of her sum-

**3.** The dissent's reliance on *Misic v. Bldg. Serv. Employees*, 789 F.2d 1374 (9th Cir.1986) is misplaced. *Misic* is irrelevant to our discussion of the claims in this case and does not involve estoppel. *Misic* merely holds that where a plan participant assigns a right of reimbursement to a physician, the physician may bring a claim for benefits. *Id.* at 1379.

**4.** *Davidian*, incorrectly cites dictum contained in footnotes in *Thurber* for the proposition that "*Thurber* also recognized the possibility of individual estoppel recovery against the administrator and other trustees, though not against the fund." *Davidian*, at 136 (citing *Thurber*, 542 F.2d at 1109 nn. 4 & 5). *Thurber* makes no mention of estoppel, trustees or administrators. In *Thurber* we simply observed that the "hold-ing would not preclude Thurber from pursuing any other remedy which might be available to him." *Thurber*, 542 F.2d at 1109 n. 5. We did not, however, purport to suggest the nature of such other remedies. In the present case, the remedies available to Moran are expressly set forth in ERISA.

**5.** We understand the dissent's concern that the plaintiff have a remedy under the law, however, that does not excuse Moran's attorney for his failure to consult the express provisions of ERISA to determine the identity of the plan administrator. Instead, he chose to rely on the erroneous conclusion of law of a claims supervisor. If Moran's attorney had consulted sections 1132(c) and 1002(16), he would have discovered that Aetna was *not* the plan administrator.

mary judgment motion on June 22, 1987. Aetna argues that we have no jurisdiction to review the denial of a summary judgment because it is an unappealable interlocutory order.

The denial of a summary judgment motion is appealable after the entry of a final judgment. 10 C. Wright, A. Miller, and M. Kane, *Federal Practice & Procedure*, § 2715, at 636 (2d ed. 1983) "At that time, the party who unsuccessfully sought summary judgment may argue that the trial court's denial of the Rule 56 motion was erroneous." *Id.* at 638–39. We have jurisdiction to review the denial of Moran's motion for summary judgment since the district court entered a final judgment on November 30, 1987.

■ In her motion for summary judgment, Moran argued that Aetna was estopped from asserting that it was not the plan administrator for Moran's ERISA health plan because of the false representation of its claims supervisor. As discussed above, Congress has expressly limited the persons who may be sued under section 1132(c). We cannot make an end run around the statute by creating an additional class of persons liable as plan administrators under an estoppel theory.

The summary judgment entered in this action on November 30, 1987, and the denial of Moran's summary judgment on September 14, 1987, are AFFIRMED.

FLETCHER, Circuit Judge, dissenting:

This case presents a novel issue of law: does ERISA preempt a federal law claim of estoppel where an insurance company erroneously holds itself out as the plan administrator? This circuit has held that

> [e]ven though ERISA preempts common law theories of contract law, the principles of equitable estoppel apply to pension plans. In this circuit, estoppel is available against a nongovernmental party who has made a knowing false representation, or concealment of material facts, to a party ignorant of the true facts, with the intention that the other party should rely on the representation,

and the other party actually and detrimentally relies on it.

*Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986) (where employer informs striking worker that he is being dropped from payroll because no work was available, rather than because he was refraining from work, employer is estopped from denying plaintiff pension benefits).

ERISA preempts *state* law contract theories based on estoppel, *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir. 1985), but not federal claims based on estoppel. *Id.* at 1096. We stated in *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496 (9th Cir.1984), that courts retain broad authority to develop interstitial ERISA common law:

> Congress realized that the bare terms, however detailed, of these statutory provisions would not be sufficient to establish a comprehensive regulatory scheme. It accordingly empowered the courts to develop, in the light of reason and experience, a body of federal common law governing employee benefit plans. . . .
>
> . . . Congress viewed ERISA as a grant of authority to the courts to develop principles governing areas of the law regulating employee benefit plans that had previously been the exclusive province of state law. . . .
>
> . . . The courts are directed to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA, referring to and guided by principles of state law when appropriate, but governed by the federal policies at issue.

*Id.* at 1499–1500 (holding that ERISA does not have retroactive application); *see also Misic v. Building Service Employees Health & Welfare Trust*, 789 F.2d 1374 (9th Cir.1986) (although 29 U.S.C. § 1056(d) prohibits assignment of *pension* benefits, ERISA is silent regarding assignment of health and welfare benefits; assignment allowed as matter of federal common law).

*Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) is not dispositive on the issue

presented here. *Russell* was concerned solely with the *type* of remedies available to individuals under 29 U.S.C. § 1109(a); it held that § 1109(a) affords only relief which would benefit the plan as a whole. Because other sections of ERISA benefit individuals, § 1109(a) could not be read to extend relief. *Id.* at 142–43, 105 S.Ct. at 3090–91.[1]

The result in *Russell* was dictated by the plain language of the statute, and by the fact that § 1109 was concerned principally with upholding the financial integrity of the plan. *Id.* at 141–42 & n. 9, 105 S.Ct. at 3090 & n. 9. In contrast, § 1132(c) is specifically concerned with protecting the beneficiary's interest in obtaining plan information, providing that "[a]ny administrator" can, in certain circumstances, "be personally liable to such participant as beneficiary." This case is much closer to *Misic*, which expanded the class of potential plaintiffs beyond those expressly enumerated in § 1132(a)(1)(B), than to *Russell*, which dealt with remedies. I see no rational basis for expanding the class of plaintiffs by reference to federal common law while refusing to permit expansion of the class of defendants by reference to that same body of law. Indeed, the statutory provision is the same in both cases: § 1002, the definitions provision.

The majority's reliance on *Davidian v. Southern Cal. Meat Cutters Union*, 859 F.2d 134 (9th Cir.1988) also is misplaced. That case merely continues a line of decisions holding that a benefit plan cannot be estopped from denying benefits if payment would be inconsistent with the written plan. *See, e.g., Thurber v. Western Conf. of Teamsters Pens. Plan*, 542 F.2d 1106 (9th Cir.1976). Those decisions are based on the application of the law of trusts: the

written terms of a plan cannot be altered so as to divert contributions made on behalf of covered employees. *Id.* at 1109. This is not a suit against a trust fund: § 1132(c) provides that the *administrator*, not the fund, is liable to the beneficiary. "This distinction is critical." *Davidian*, at 136. *Davidian* expressly noted that estoppel may be available against individual trustees and plan administrators, since "recovery against individual fiduciaries would not directly diminish the fund." *Id.*

It is apparent that absolutely no authority, statute or case law, prevents this court from applying the doctrine of estoppel in this case.[2] Furthermore, applying estoppel here would further substantial policies of ERISA. § 1001(a) and (b) demonstrate congressional interest in protecting employees by requiring prompt disclosure of information pertaining to the plan. This goal would be frustrated by shielding fiduciaries from the consequences of providing false information. Because an employee who is told that the wrong entity is the plan administrator is likely to continue to seek information from that source, rather than the proper source, imposing the penalties for delay provided by § 1132(c) on the fiduciary who causes that delay by claiming to be the plan administrator would further the purposes of § 1132(c). Nor would Moran be given a windfall: the statute allows the court discretion to decide whether to impose personal liability and to decide the amount of any penalty up to the statutory maximum that should be assessed.

Aetna is a sophisticated purveyor of insurance and administrator of ERISA plans. It distributed materials to plaintiff's employer and to plaintiff that were consistent with its being the plan administrator for

---

**1.** § 1109(a) includes phrases such as "shall be ... liable to make good *to such plan* any losses *to the plan*"; "and to restore *to such plan* any profits." (emphasis added).

**2.** The majority advances the proposition that estopping Aetna from denying it is the plan administrator cannot be countenanced because it would be inconsistent with the express language of the statute. Maj. op. at 300. On the contrary, the invocation of estoppel in this case does *no* violence to the language of the statute—

it simply precludes Aetna from denying that it is the plan administrator. In any event, as a general proposition, the majority's pronouncement is unsound. Statutes of limitations' explicit language routinely is subjected to equitable modification by the application of estoppel, waiver, or equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Learned v. City of Bellevue*, 860 F.2d 928, 931 (9th Cir.1988).

plaintiff's employer's plan.[3] Upon inquiry, it confirmed in writing to plaintiff that it was the plan administrator. Plaintiff's reliance on Aetna's statement that it was the plan administrator was eminently reasonable.[4]

Contrary to the majority's argument, Moran could not have determined that Aetna was not the plan administrator merely by consulting §§ 1132(c) and 1002(16). § 1132(c) does not define "plan administrator." The definition in § 1002(16) requires reference to "the terms of the instrument under which the plan is operated." There is considerable doubt that such an instrument was ever provided to Moran or placed into evidence. Aetna seeks to rely on the fact that its group insurance policy does not identify a plan administrator, assuming that § 1002(16)(B) would then apply, making Moran's employer the plan administrator.

There are two flaws to such reasoning. First, the group insurance policy cannot be the written instrument for purposes of § 1002(16), because it fails to "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Second, from the absence of a known written instrument, Moran could not reasonably infer that § 1002(16)(B) would apply. For all Moran could know, Aetna might well have been in possession of the requisite written instrument. The fact that some of the documents available to Moran did not reveal the identity of the plan administrator is irrelevant, especially in light of the fact that the health identification card furnished to Moran named Aetna as the plan administrator, and Aetna's own claims supervisor confirmed this representation in writing. The majority forgets that this whole dispute centers around Aetna's frustration of Moran's attempts to acquire the documentation she needed to understand Aetna's obligations. Moran requested documents from Aetna in reliance on Aetna's assertions that it was, indeed, the plan administrator. Yet Moran is expected to deduce from the absence of language in some of the documents which were not provided to her that Aetna was not what it claimed to be!

Aetna should be subject to the penalties that may be assessed in the court's discretion against a plan administrator under § 1132(c). I would reverse and remand to the district court to reach the merits of plaintiff's estoppel claim.

---

**3.** For example, Moran's health identification card named Aetna as the plan administrator.

**4.** While the availability of other remedies under § 1109(a) may adversely affect Moran's ability to prove detrimental reliance in this case, I address only the question of whether estoppel, if proven, can be applied so as to impose penalties under § 1132(c). The majority's argument erroneously compresses the merits of Moran's particular claim with the more general question.