105 F.3d 665
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lillie GREEN, Plaintiff-Appellant,
v.
HOTEL EMPLOYEES & RESTAURANT EMPLOYEES INTERNATIONAL
WELFARE-PENSION FUNDS, Defendant-Appellee.
 No. 95-16314.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 10, 1996.
Decided Jan. 7, 1997.
 
 Before: WOOD, JR.,* SCHROEDER, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Plaintiff-Appellant Lillie Green ("Green") is a participant in Plan 150 of defendant-appellee Hotel Employees and Restaurant Employees International Welfare-Pension Funds ("Welfare Fund"). After she was injured in an automobile accident, Welfare Fund paid her about $2,000 in benefits. She also filed a personal injury action against the driver of one of the other vehicles.
 
 
 3
 Pursuant to the written plan, Welfare Fund filed a subrogation lien on any recovery Green might obtain in her personal injury action. Eventually, Green settled that action and asked Welfare Fund to pay a pro rata share of her attorney fees by reducing its subrogation lien on the settlement proceeds. After Welfare Fund refused, she filed the instant action. Green seeks a declaration that federal common law surrounding ERISA mandates that an employee benefit plan which has subrogation and reimbursement rights in any judgment or settlement that an injured beneficiary obtains from a third party bear a pro rata share of the attorney fees that the injured beneficiary incurs.
 
 
 4
 The district court declined her invitation to adopt such a rule and granted Welfare Fund's motion for summary judgment. Because we find that such a common law rule would contradict a reasonably administered provision in Welfare Fund's written plan, we affirm.
 
 I.
 
 5
 Initially, we note that we review a district court order granting summary judgment de novo. Associated Gen. Contractors, San Diego Chapter, Inc., Apprenticeship and Training Trust Fund v. Smith, 74 F.3d 926, 929 (9th Cir.1996). However, because the parties to this action agree that no genuine issue of material fact exists, we need only determine whether the district court correctly applied the substantive law. Id.
 
 II.
 
 6
 In this case, the district court determined that Welfare Fund's written plan expressly contemplated full reimbursement and that the written plan also allowed the Trustees to reduce Welfare Fund's subrogation lien to account for special circumstances, including an injured participant's attorney fees. Because these provisions addressed the exact situation arising in this case, the court refused to adopt Green's proposed common law rule. Instead, finding nothing inequitable in these written provisions, the court refused "to substitute its judgment and impose a hard and fast rule that substitutes [for] the express language of the provisions of Plan 150...."
 
 
 7
 In enacting ERISA, Congress envisioned that the federal courts would formulate a nationally uniform federal common law to supplement the statute's explicit provisions. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110-11 (1989); Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 386 (9th Cir.1994). However, such judicially created common law rules must effectuate ERISA's underlying policies. Saltarelli, 35 F.3d at 386; PM Group Life Ins. Co. v. Western Growers Assurance Trust, 953 F.2d 543, 546 (9th Cir.1992) ("We thus have the authority, indeed the obligation, to adopt a federal rule ... that best comports with the interests served by ERISA's regulatory scheme.").
 
 
 8
 One of ERISA's primary purposes is to ensure the integrity of written plans. Duggan v. Hobbs, 99 F.3d 307, 309-10 (9th Cir.1996); see Van Orman v. American Ins. Co., 680 F.2d 301, 312 (3d Cir.1982) ("The Supreme Court has emphasized the primacy of plan provisions absent a conflict with the statutory policies of ERISA."). Therefore, a court should not fashion a common law rule which would override the express terms of a private plan unless the overridden plan provision conflicts with statutory provisions or other policies underlying ERISA. Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th Cir.1992) ("[R]esort to federal common law generally is inappropriate when its application would ... threaten to override the explicit terms of an established ERISA benefit plan."); see, e.g., Parker v. BankAmerica Corp., 50 F.3d 757, 769 (9th Cir.1995) (a party cannot maintain a common law claim for equitable estoppel if recovery would contradict the written provisions of the plan); Davidian v. Southern Calif. Meat Cutters Union and Food Employees Benefit Fund, 859 F.2d 134, 136 (9th Cir.1988) (same).
 
 
 9
 Here, Green asks us to create a federal common law rule obligating all ERISA-regulated funds that have rights to reimbursement or subrogation in an injured participant's judgment or settlement to pay a pro rata share of the attorney fees that the injured participant incurs in prosecuting the action resulting in the judgment or settlement. However, both the written plan and the subrogation agreement, which Green signed as a condition to receiving benefits, provide that Green must reimburse Welfare Fund fully. Indeed, Article 33 of the written plan states that Welfare Fund may recover "the amount of benefits it pays" and that Welfare Fund "expects full reimbursement."
 
 
 10
 Acknowledging these provisions, Green contends that we should judicially override them because they are unreasonable. She argues that they allow Welfare Fund to obtain the benefit of her legal action without sharing in its costs. We disagree. Article 33 is not unreasonable because it also expressly provides that the Trustees may consider attorney fees as a "special circumstance" requiring the Trustees to reduce Welfare Fund's subrogation lien. This provision reasonably balances the injured participant's interest in receiving some accommodation for her legal fees with Welfare Fund's interest in ensuring that its Trustees fulfill their fiduciary duty to administer the trust at a reasonable cost, 29 U.S.C. § 1104(a)(1)(A)(ii) (1996), by allowing them to review the nature and extent of the legal services performed before agreeing to a level of compensation.
 
 
 11
 Furthermore, as the district court noted, no evidence suggests that Welfare Fund has administered this provision unreasonably in the past. In fact, in response to the district court's questions, counsel for Welfare Fund stated that the Trustees do not automatically refuse any request to reduce Welfare Fund's subrogation lien. Rather, counsel stated that the Trustees employ an investigator and counsel to determine what services the injured participant's attorney performed and to negotiate a lien reduction. Counsel also stated that where an injured participant's tort recovery minus her attorney fees is less than Welfare Fund's lien, Welfare Fund has never sought to recover more than the participant's recovery minus her attorney fees. Therefore, Article 33 is a reasonable provision. Because Green's proposed common law rule would override the express terms of Article 33, the district court properly refused to adopt it.
 
 
 12
 Indeed, other federal courts addressing this issue have reached similar conclusions. Most notably, in Ryan by Capria-Ryan v. Federal Express Corp., 78 F.3d 123, 127-28 (3d Cir.1996), the Third Circuit refused to subtract a pro rata share of attorney fees from an employee benefit fund's subrogation lien because such a reduction would override the written plan's express subrogation provision. That provision required an injured participant to reimburse the Fund for "100%" of the benefits that he received unless his recovery less his attorney fees was not enough to reimburse the Fund completely. Id. at 125.
 
 
 13
 Likewise, in Thompson v. Federal Express Corp., 809 F.Supp. 950, 958 (M.D.Ga.1992), the Middle District of Georgia held that an injured participant could not reduce his employee benefit fund's subrogation lien to reflect a pro rata share of his attorney fees. The court refused to reduce the subrogation lien because the plan at issue specifically obligated the participant to reimburse the Fund for all of the money that the Fund paid to it. Id. at 958. See also Provident Life and Accident Ins. Co. v. Williams, 858 F.Supp. 907, 912 (W.D.Ark.1994) (awarding the injured participant his attorney fees but recognizing that "if the right to reimbursement were contractually defined, the parties could expressly agree that reimbursement would be the first money out of the settlement monies with no deduction for attorneys fees and costs.").
 
 
 14
 Green points to three district court decisions, Dugan v. Nickla, 763 F.Supp. 981, 984 (N.D.Ill.1991), Serembus v. Mathwig, 817 F.Supp. 1414, 1423 (E.D.Wis.1992) and Cutting v. Jerome Foods, Inc., 820 F.Supp. 1146, 1155 (W.D.Wis.1991), aff'd on other grounds, 993 F.2d 1293 (7th Cir.1993), to support her argument. Although all of these courts apportioned attorney fees between injured participants and employee benefit plans as a matter of federal common law, none of these decisions discuss in detail the courts' reasons for apportioning attorney fees. Likewise, these decisions fail to discuss whether the subrogation and/or reimbursement provisions in the disputed plans specifically provided for reducing the participants' reimbursement obligations to account for their attorney fees. Therefore, we cannot determine whether apportioning attorney fees between the injured participants and the employee benefit plans as a matter of federal common law contradicted the express terms of the written plans in these cases. As such, they offer less insight into the case at hand than the Ryan and Federal Express decisions.
 
 
 15
 Moreover, another decision from the Northern District of Illinois recently disagreed with these decisions and refused to reduce an employee benefit fund's subrogation lien by its pro rata share of attorney fees. In Blackburn v. Becker, 933 F.Supp. 724, 729 (N.D.Ill.1996), the court concluded, in part, that it had no authority to craft an interpretive federal rule providing for attorney fees apportionment because the bargained-for plan provisions unambiguously provided for full reimbursement and that not enforcing the unambiguous plan provisions would be inequitable.
 
 III.
 
 16
 Green also contends that she is entitled to her attorney fees for this appeal pursuant to 29 U.S.C. § 1132(g)(1). Section 1132(g)(1) vests a court with discretion to award fees and costs to either party in an action brought under Section 1132. 29 U.S.C. 1132(g)(1) (1996); Hummel v. S.E. Rykoff & Co., 634 F.2d 446, 452 (9th Cir.1980). We have construed this provision to include attorney fees and costs on appeal. Canseco v. Construction Laborers Pension Trust for Southern Cal., 93 F.3d 600, 609 (9th Cir.1996).
 
 
 17
 Although Section 1132(g)(1) does not limit such an award to a prevailing party, awarding attorney fees to an unsuccessful litigant would not serve any of the purposes underlying Section 1132(g)(1). See Hummel, 634 F.2d at 453 (When awarding attorney fees, a court considers inter alia the opposing party's degree of culpability; whether an award of attorney fees would deter others from acting under similar circumstances; and the relative merits of the parties' positions.)
 
 
 18
 Moreover, even if Green had prevailed in this action, she would not be entitled to recover her attorney fees. In fact, neither she nor Welfare Fund is entitled to recover fees under Section 1132 because both parties presented nonfrivolous arguments supported by case law from outside of this circuit. E.g., DeVoll v. Burdick Painting, Inc., 35 F.3d 408, 414 (9th Cir.1994) (declining to award fees to either party where the losing party's arguments were not frivolous and were supported by case law from outside of the Ninth Circuit), cert. denied, --- U.S. ----, 115 S.Ct. 1381 (1995).
 
 IV.
 
 19
 For the foregoing reasons, the district court order granting Welfare Fund's motion for summary judgment is AFFIRMED.
 
 
 
 *
 The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3